1

2

3

4

5                  UNITED STATES DISTRICT COURT

6                  EASTERN DISTRICT OF CALIFORNIA

7
                                    )    1:04-cv-6501 OWW LJO
8                                   )
   RYAN KATZENBACH and RIC OSUNA,   )    MEMORANDUM DECISION AND
9                                   )    ORDER RE DEFENDANT'S
              Plaintiffs,           )    MOTIONS TO DISMISS PURSUANT
10                                  )    TO FED. R. CIV. P. 12(B)(2)
       v.                           )    AND 12(B)(6).
11                                  )
                                    )
12  GREG S. GRANT, TRACEY LYNN      )
    DEFEO, and DOES 1-12, inclusive,)
13                                  )
                                    )
14            Defendants.           )
                                    )
15  _____

16

17                  I.    **INTRODUCTION**

18

19        Defendant Greg S. Grant ("Defendant" or "Defendant Grant")

20  moves to dismiss Plaintiffs Ryan Katzenbach's and Ric Osuna's

21  ("Plaintiffs") First Amended Complaint for lack of personal

22  jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure

23  to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

24  Plaintiffs oppose the motion.

25

26                  II.   **PROCEDURAL HISTORY**

27

28        Plaintiff Katzenbach filed his original complaint *pro se* on

                                    1

November 2, 2004, alleging defamation.  (Doc. 1, Compl.).

Plaintiffs Katzenbach and Osuna filed a First Amended Complaint

("FAC") *pro se* on November 24, 2004.  (Doc. 9, FAC).  The FAC is

almost 40 pages long and has about 26 exhibits.  The FAC contains

six causes of action, which are actually 7 separate claims:

(1) Libel; (2) Tortious Interference with Contractual Relations;

(3) Unfair Business Practices in violation of Cal. Bus. & Prof.

Code § 17200;[1] (4) Copyright Infringement; (5) Trademark

Infringement; (6) Invasion of Privacy; (7) Intentional Infliction

of Emotional Distress.

Defendants Grant and DeFeo requested extension of time to

answer the FAC.  (Doc. 12, Request, filed Dec. 2, 2004).  They

were granted a 60-day extension from the time receipt of the

order to answer.[2]  (Doc. 13, Order, filed Dec. 6, 2004).  On

February 7, 2005, Defendant Grant moved to dismiss on the basis

of lack of personal jurisdiction pursuant to Fed. R. Civ. P.

12(b)(2) and on the basis of failure to state a claim pursuant to

Fed. R. Civ. P. 12(b)(6).  (Doc. 15, Def.'s Mem.).  Oral argument

was heard on March 14, 2005.  Plaintiff Katzenbach was present

and Larry Zerner appeared on behalf of Defendant Grant.

//

//

---

[1] Plaintiffs' claims for Tortious Interference with
Contractual Relations and Unfair Business Practices under Cal.
Bus. & Prof. Code § 17200 are both listed under Count II of the
FAC.

[2] Defendant Grant asserts that Defendant Defeo is not a
defendant in this action because she has not been served.  Only
Defendant Grant moves to dismiss.

1

2

### III.   **STATEMENT OF FACTS**

3     Plaintiffs' claims against Defendants arise out of the
4 apparent failure of Plaintiffs' alleged negotiations with a
5 motion picture production company to result in production of a
6 movie based on a book that Plaintiff Osuna wrote.  Plaintiffs
7 allege that the book, *The Night the DeFeos Died*: *Reinvestigating*
8 *the Amityville Murders* ("*The Night The DeFeos Died*") was
9 published by Plaintiff Katzenbach's publishing company, and
10 addresses the gruesome 1974 "haunted house" murders of members of
11 the DeFeo family.  Ronald DeFeo is currently serving a life
12 sentence for the murder of his mother, father, and four siblings
13 in Amityville, New York.  According to Plaintiffs, these murders
14 are the subject of several books and at least one movie.

15     According to the FAC, Defendant Tracy Lynn DeFeo is Ronald
16 DeFeo's wife of approximately six months.  Plaintiffs also allege
17 that Defendant Greg S. Grant is the owner and publisher of the
18 website www.thenightexposed.net, which Defendant Grant does not
19 dispute.

20     Plaintiffs allege that Defendants interfered with
21 Plaintiffs' negotiations with Sony Pictures and the USA Network
22 to produce the movie by sending a letter to Sony Pictures that
23 claimed Osuna's book was a fraud.  Plaintiffs also allege that
24 Defendant Grant published this letter and other defamatory
25 statements about Plaintiffs on his website.  Plaintiffs do not
26 allege that they had a contract with Sony Pictures or the
27 USA Network to produce the movie, and allege only that they had a
28 "tentative deal."

**3**

1   Plaintiff Katzenbach is a resident and citizen of
2  California.  Plaintiff Osuna is a resident and citizen of Nevada,
3  and Plaintiffs cite to Nevada law in their complaint in addition
4  to California law.  Defendant Grant is a citizen of South
5  Carolina.

6   Defendant Grant has offered paintings by Ronald DeFeo for
7  sale, both directly from Mr. Grant's website and through E-Bay.
8  Defendant Grant acknowledges he had a contract with E-Bay that
9  allowed for the sale of Ronald DeFeo's paintings.  The contract
10 contained a waiver of personal jurisdiction, consenting to
11 personal jurisdiction in Santa Clara County, California, in the
12 Northern District of California, to resolve disputes between
13 Defendant Grant and E-Bay.  There is no evidence that Mr. Grant
14 ever made any sales of paintings, including sales to anyone in
15 California or through E-Bay.[3]  Defendant Defeo sent the letter to
16 Sony Pictures and the USA Network to addresses in California.

17   Plaintiffs acknowledge that Mr. Osuna's wife is an exotic
18 dancer in Las Vegas and that she had a "promotional" website

19

20   [3] Plaintiffs filed a declaration in support of personal
21 jurisdiction on March 14, 2005.  (Doc. 23).  Pursuant to Local
   Rule 78-230(b), all motions and accompanying affidavits must be
22 submitted not less than twenty-eight days (for personal service)
   or thirty-one days (for electronic service or service by mail)
23 before the date the motion is to be heard.  Plaintiff submitted
   the affidavit in violation of the Local Rules.  However,
24 Defendants were given an opportunity to respond to the
   declaration.  *See* Local Rule 78-230(e).  Defendants have not
25 responded to the declaration or offered any evidence of their
   own.  The declaration is that of Deborah Martin, an acquaintance
26 of Mr. Katzenberg.  Ms. Martin, a resident of California, states
   that she ordered a painting from Defendant Grant on his website.
27 Grant agreed to sell her a painting; however, no sale was ever
   made.
28

**4**

about four years ago on which nude photographs of Mr. Osuna's wife were posted.  Plaintiffs also acknowledge that Mr. Osuna helped his wife with this website.

## IV.   LEGAL ANALYSIS

### A.   *Pro Se* Litigant-Review of Complaint.

Plaintiffs are *pro se* litigants.  The court has a "duty...to construe *pro se* pleadings liberally." *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001) (citing *Hamilton v. U.S.*, 67 F.3d 761, 764 (9th Cir. 1995) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quotation omitted)).  The pleadings of *pro se* litigants "are held to less stringent standards than formal pleadings drafted by lawyers." *Hughes*, 449 U.S. at 10 (quotation omitted).

### B.   Defendant Grant's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2).

#### 1.   Legal Standard.

Plaintiffs bear the burden of establishing that the district court has personal jurisdiction over each defendant. *See Fed. Deposit Ins. Corp. v. British-American Ins. Co.*, 828 F.2d 1439, 1441 (9th Cir. 1987).  "[U]ncontroverted allegations in the complaint must be taken as true." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).  "When a

**5**

defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). Any "conflicts between the facts contained in the parties' [pleadings and] affidavits must be resolved in [the non-movant's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T*, 94 F.3d at 588 (citations omitted); *see also Dole*, 303 F.3d at 1108 (finding that "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor"). Where the district court "relies solely on affidavits and discovery materials, the plaintiff need only establish a prima facie case of jurisdiction." *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 n. 3 (9th Cir. 1993). If an evidentiary hearing is held or the case proceeds to trial, however, "the burden on the plaintiff shifts to the preponderance of the evidence." *Id*.

There is no applicable federal statute governing personal jurisdiction for plaintiffs' claims. As a result, California law applies, as it is the state in which the forum district court sits. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, *1129* (9th Cir. 2003) (citing *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1484 (9th Cir. 1993). California's "long-arm" statute "allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.; see also Rano*, 987 F.2d at 587 (citing *Data Disc, Inc. v. Sys.*

**6**

*Tech. Assoc.*, 557 F.2d 1280, 1286 (9th Cir. 1977); Cal. Civ.
Proc. § 410.10 (stating that "[a] court of this state may
exercise jurisdiction on any basis not inconsistent with the
Constitution of this state or of the United States").

Determining whether a court may exercise personal
jurisdiction over a defendant is ordinarily a two-step process:

> (1)   whether the forum state's long-arm statute
>        reaches the defendant; and
>
> (2)   whether the exercise of jurisdiction comports
>        with the federal constitutional principle of due
>        process.

*Id.*  For a defendant to be subject to personal jurisdiction in
the forum state, due process requires that the defendant must
have certain minimum contacts with the forum state such that the
maintenance of the suit does not offend "traditional notions of
fair play and substantial justice."  *Int'l Shoe Co. v. Wash.*, 326
U.S. 310, 316 (1945); *see also Haisten v. Grass Valley Med.
Reimbursement Fund*, 784 F.2d 1392, 1396 (9th Cir. 1986)
(California's long-arm statute "confers jurisdiction to the
extent that it comports with due process").

Due process may be satisfied by establishing that one of two
forms of personal jurisdiction exists: general jurisdiction or
specific jurisdiction.  *See Lake v. Lake*, 817 F.2d 1416, 1420-21
(9th Cir. 1987).

**(a)   General Jurisdiction**

General jurisdiction exists when a defendant "is domiciled
in the forum state" or has "substantial" or "continuous and

systematic" contacts with the forum state, even if the cause of
action does not arise out of or relate to those contacts.
*Bancroft & Masters, Inc. v. Augusta Nat'l*, Inc., 223 F.3d 1082,
1086 (9th Cir. 2000); *see also Panavision Intern., L.P. v.
Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing *Helicopteros
Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16
(1984)).

"The standard for establishing general jurisdiction is
'fairly high.'" *Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d at
1076 (citing *Bancroft*, 223 F.3d at 1086). To meet this standard,
the defendant's "contacts with the forum state must be of a sort
that 'approximate physical presence.'" *Id*. (quoting *Bancroft*,
223 F.3d at 1086). "Factors to be taken into consideration are
whether the defendant makes sales, solicits or engages in
business in the state, serves the state's markets, designates an
agent for service of process, holds a license, or is incorporated
there." *Id*. (quoting *Bancroft*, 223 F.3d at 1086).

"Even if substantial, or continuous and systematic, contacts
exist, the assertion of general jurisdiction must be reasonable."
*Gator.com*, 341 F.3d at 1077 (citing *Amoco Egypt Oil Co. v. Leonis
Navigation Co., Inc.*, 1 F.3d 848, 851-53 & n.2 (9th Cir. 1993)).[4]

---

[4] In determining whether specific personal jurisdiction
exists, a reasonableness test is applied. The Ninth Circuit has
also used these same seven factors to determine the
reasonableness of general personal jurisdiction:

> (1)   The extent of purposeful interjection into the
>       forum state;
> (2)   The burden on the defendant of defending in the
>       forum;
> (3)   The extent of conflict with the sovereignty of

**(b)   Specific Jurisdiction.**

"If, however, a forum state cannot assert general jurisdiction over the defendant, it may still assert specific jurisdiction depending on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action." *Lake*, 817 F.2d at 1421.  To determine whether the district court can exercise specific jurisdiction over the defendants, courts apply a three-part test:

(1)   the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)   the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)   the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

---

                  defendant's state;
(4)   The forum state's interest in adjudicating the dispute;
(5)   The most efficient judicial resolution of the controversy;
(6)   The importance of the forum to plaintiff's interest in convenient and effective relief;
(7)   The existence of an alternative forum.

*See Amoco Egypt Oil Co.*, 1 F.3d at 852.

1  *Harris Rutsky & Co.*, 328 F.3d at 1129 (quoting *Lake*, 817 F.2d at
2  1421).

3      Under the first prong, "courts must examine the defendant's
4  contacts with the forum at the time of the events underlying the
5  dispute when determining whether they have jurisdiction." *Steel
6  v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987).  "The
7  purposeful availment standard requires more than foreseeability
8  of causing injury in another state." *Terracom v. Valley Nat.
9  Bank*, 49 F.3d 555, 560 (9th Cir. 1995) (citing *Burger King Corp.
10  v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  "The foreseeability
11  that is critical to due process analysis ... is that the
12  defendant's conduct and connection with the forum State are such
13  that he should reasonably anticipate being haled into court
14  there." *Terracom*, 49 F.3d at 560 (citing *World-Wide Volkswagen
15  Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  "The purposeful
16  availment prong prevents defendants from being haled into a
17  jurisdiction through 'random,' 'fortuitous,' or 'attenuated
18  contacts.'"  *Terracom*, 49 F.3d at 560 (quoting *Burger King*, 471
19  U.S. at 475).

20      "The second prong of the specific jurisdiction test
21  (litigation must 'arise out of or relate to those activities') is
22  met if, 'but for' the contacts between the defendant and the
23  forum state, the cause of action would not have arisen."
24  *Terracom*, 49 F.3d at 561 (citing *Shute v. Carnival Cruise Lines*,
25  897 F.2d 377, 385-386 (9th Cir. 1990) (citations omitted), rev'd
26  on other grounds, 499 U.S. 585 (1991)).

27      The third prong of the test, reasonableness, is presumed
28  once the court finds purposeful availment: "[w]e presume that an

10

1  otherwise valid exercise of specific jurisdiction is reasonable."
2  *Ballard v. Savage*, 65 F.3d 1495, 1500 (1995) (citing *Sher v.*
3  *Johnson,* 911 F.2d 1357, 1364 (9th Cir. 1990)("once court finds
4  purposeful availment, it must presume that jurisdiction would be
5  reasonable")).  When such a presumption operates, the burden of
6  proving unreasonableness shifts to defendant.  *Ballard*, 65 F.3d
7  at 1500.  At this point, to avoid jurisdiction, the defendant
8  must "present a compelling case that the presence of some other
9  considerations would render jurisdiction unreasonable."  *Ballard*,
10 65 F.3d at 1500 (quoting *Burger King*, 471 U.S. at 477).  In
11 judging reasonableness, the court "balance[s] all seven factors,
12 recognizing that none of the factors is dispositive in itself."[5]
13 *Terracom*, 49 F.3d at 561 (citation omitted).

14     The law formerly required a plaintiff to demonstrate each of
15 these three factors to establish specific jurisdiction.  *Ochoa v.*
16 *J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1188 (9th Cir.
17 2002)(citing *Data Disc*, 557 F.2d at 1287).  In light of
18 subsequent Supreme Court precedent, the Ninth Circuit adopted a
19 more "flexible approach."  *Ochoa*, 287 F.3d at 1188 (quoting *Brand*
20 *v. Menlove Dodge*, 796 F.2d 1070, 1074 (9th Cir. 1986));  *see also*
21 *Haisten*, 784 F.2d at 1397 (finding that a "modification" of
22 California's "three-prong test" was necessary in light of the
23 Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 789
24 (1984)).

25     "Jurisdiction may be established with a lesser showing of
26 minimum contacts 'if considerations of reasonableness dictate.'"

27 _____

28     [5] *See supra* note 3 for a list of the seven factors.

**11**

1 | *Id.* (quoting *Haisten*, 784 F.2d at 1397).   "'Under this analysis,
2 | there will be cases in which the defendant has not purposefully
3 | directed its activities at the forum state, but has created
4 | sufficient contacts to allow the state to exercise personal
5 | jurisdiction if such exercise is sufficiently reasonable.'"   *Id.*
6 | (quoting *Brand*, 796 F.2d at 1074).   "[A]ctivity by the defendant
7 | need not physically take place in the forum state so as to
8 | constitute sufficient contact under the due process test
9 | [citations omitted].... [T]he Supreme Court has consistently
10 | rejected the notion that absence of physical contacts with a
11 | forum state can defeat personal jurisdiction, 'so long as a
12 | commercial actor's efforts are purposefully directed toward
13 | residents of another State.'"   *Haisten*, 784 F.2d at 1398 (quoting
14 | *Burger King*, 471 U.S. at 475-477); *see also Calder*, 465 U.S. at
15 | 790.

## 2.   Whether General Jurisdiction Exists.

As stated above, general jurisdiction exists when a
defendant "is domiciled in the forum state" or has "substantial"
or "continuous and systematic" contacts with the forum state,
even if the cause of action does not arise out of or relate to
those contacts. *Bancroft*, 223 F.3d at 1086.   It is undisputed
that Defendant Grant is a resident of South Carolina.   The only
issue is whether Grant's contacts with California are
"substantial" or "continuous and systematic," and if so, whether
the exercise of personal jurisdiction is reasonable. *Gator.com*,
341 F.3d at 1077.

Under some circumstances, a website can be a purposeful

1   contact with the forum state for purposes of general

2   jurisdiction.  For example, an exercise of personal jurisdiction

3   is proper where a defendant clearly does business with residents

4   of the forum state over the Internet, i.e., the website is

5   "interactive."  *See Zippo Mfg. Co. v. Zippo Dot Com Inc.*, 952

6   F. Supp. 1119, 1124 (W.D. Pa. 1997); *Gator.com*, 341 F.3d at 1079.

7   In weighing the issue of personal jurisdiction in the context of

8   the Internet, a "sliding scale" test is used in the Ninth Circuit

9   to ascertain what level of Internet activity is conducted in the

10  jurisdiction.  *Id*. (general personal jurisdiction existed in a

11  California district court where retailer conducted large

12  percentage of its business via the Internet and engaged in

13  extensive marketing and sales in California and had extensive and

14  ongoing contacts with local California vendors).  "This test

15  requires both that the party in question clearly do business over

16  the Internet, and that the internet business contacts with the

17  forum state be substantial or continuous and systematic."  *Id*.

18  (internal quotations and citations omitted).

19       Here, Plaintiff asserts that general jurisdiction over

20  Defendant Grant exists because "Defendant's website is a

21  COMMERCIAL website, offering the paintings of Ronald Joseph

22  DeFeo, Jr. For sale on the site, effectuating such sales through

23  E-Bay, a California Corporation based in San Jose, California."

24  (Doc. 9, FAC ¶ 8 (emphasis in original)).  Defendant does not

25  dispute that he offered paintings by Ronald DeFeo for sale, both

26  directly from his website and through E-Bay, but argues that no

27  personal jurisdiction exists because he made no sales to persons

28  in California, either directly or via E-Bay.

**13**

Defendant's contract with a California corporation, without something more, is insufficient to establish general personal jurisdiction in a California court. *Bancroft*, 223 F.3d at 1086 (no general personal jurisdiction even though, among other things, Defendant had licensing agreements with several California corporations).  In the Internet context, under some circumstances, extensive sales of merchandise via a website to residents of the forum state are sufficient to establish general jurisdiction. *See Gator.com*, 341 F.3d at 1078-9.  Plaintiffs, however, have not alleged, and do not dispute, that no sales of paintings were made by Defendant Grant through his website to California residents, either directly or via E-Bay.  Plaintiff has failed to establish a prima facie case of general jurisdiction over Defendant Grant.  Because there has been no showing of systematic and continuous contacts with California, the Court does not reach the second prong of the general jurisdiction inquiry, i.e., whether the exercise of general jurisdiction is reasonable.

Plaintiffs have not met their burden to establish that general personal jurisdiction over Defendant Grant exists.

### 2.   Whether Specific Jurisdiction Exists.

### (a)   Purposeful Availment.

Plaintiffs advance two arguments why the purposeful availment prong of the specific jurisdiction test is satisfied. First, Plaintiffs assert that Defendant Grant published advertisements and information, including allegedly defamatory statements about Plaintiffs, on his website that are available

**14**

for viewing nationally and internationally, including in

California.   (Doc. 9, FAC ¶ 8; Doc. 20, Pl.'s Opp. 5).

Plaintiffs argue that Defendant Grant posted allegedly defamatory

statements and the letter written by Defendant Tracy Lynn Defeo

to Sony Pictures and USA Network on his website,[6] and that these

activities were aimed at Plaintiff Katzenbach, a resident of

California, and were aimed to cause harm to him in California.

(Doc. 20, Pl.'s Opp. 3).

      Second, Plaintiffs assert that Grant's contract with E-Bay

satisfies the purposeful availment element because the contract

contains a waiver of personal jurisdiction consenting to personal

jurisdiction in California.   (*Id*. at 6).

_____

   [6] The letter written by Defendant Tracy Lynn DeFeo to Sony
Pictures & USA Network is attached to the FAC as Ex. P.   In it,
Mrs. DeFeo states, among other things:

   My name is Tracey Defeo.   I am married to Ronald Defeo Jr.
   I am writing to inform you of a fraud that has been enacted
   upon your studio and that you in turn are announced to
   continue to enable and enact upon the public.

   I have learned that you are in production to make a movie of
   Ric Osuna's book, "The Night the Defeos Died" and that the
   rights you acquired are based upon this self published book.

                        *    *    *

   It has always been my understanding that your network does
   not intend to deceive your audiences, nor does it
   deliberately contribute to the financial gain of animal
   abusers, convicted felons or pornographers.   It is my intent
   to inform you that the fraud that 210 sold books created
   would be multiplied exponentially by your disregard and
   inattention to this notice.   I am obligated to further
   notice and inform you that all rights reserved by the Defeo
   family will be strictly enforced.

1    First, Defendant argues that merely posting information,

2 including advertisements and/or defamatory statements, on a

3 website does not establish purposeful availment.  Defendant is

4 correct.  The Ninth Circuit Court of Appeals stated in *Cybersell,*

5 *Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997):

6        [S]o far as we are aware, no court has ever held that an
         Internet advertisement alone is sufficient to subject the
7        advertiser to jurisdiction in the plaintiff's home state.
         [citation] Rather, in each, there has been "something more"
8        to indicate that the defendant purposefully (albeit
         electronically) directed his activity in a substantial way
9        to the forum state.

10 Defendant Grant's ownership of a website that is viewable in

11 California is not sufficient to establish the purposeful

12 availment element of the specific jurisdiction analysis.  *Id.*;

13 *see also Medinah Mining, Inc. v. Amunategui*, 237 F. Supp. 2d

14 1132, 1135 (D. Nev. 2002).

15    In cases where intentional torts are alleged, including

16 cases involving the Internet, it is also appropriate to apply the

17 "effects test" of *Calder v. Jones*, 465 U.S. 783, 789-90 (1984),

18 to determine whether the purposeful availment prong has been

19 satisfied.  *See Medinah Mining*, 237 F. Supp. 2d at 1135; *see also*

20 *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir.

21 1998) (applying effects test to trademark infringement and unfair

22 competition claims); *Caruth v. Int'l Psychoanalytical Ass'n*, 59

23 F.3d 126, 128 n. 1 (9th Cir. 1995) (applying effects test to

24 defamation, tortious interference with business relations, and

25 intentional infliction of emotional distress); *Brainerd v.*

26 *Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir.

27 1989) (applying effects test to defamation and tortious

28 interference with contract claims).

**16**

1    In this case, Plaintiffs have alleged seven causes of

2  action, which are all intentional torts.  Application of the

3  effects test is therefore appropriate here.  However, Plaintiffs'

4  argument for specific personal jurisdiction under the effects

5  test fails.

6    Under the "effects test," personal jurisdiction is based on:

7  "(1) intentional actions (2) expressly aimed at the forum state;

8  (3) causing harm, the brunt of which is suffered--and which the

9  defendant knows is likely to be suffered--in the forum state."

10  *Panavision*, 141 F.3d at 1321, quoting *Core-Vent*, 11 F.3d at 486.

11    To satisfy the effects test, Plaintiffs must first

12  successfully allege an "intentional act."  The intentional act

13  alleged here is that Defendant Grant posted on his website

14  various defamatory statements, including an allegedly defamatory

15  letter to Sony and USA Network written by a third party (i.e.,

16  Defendant DeFeo).  Publishing defamatory statements may be

17  sufficient to satisfy the "intentional act" element of the

18  purposeful availment test.  Here, Plaintiff has alleged that

19  Defendant Grant published defamatory statements on his website.

20  Defamation is an intentional tort and satisfies the first prong

21  of the effects test.

22    The second element of the effects test is "express aiming."

23  The Ninth Circuit holds that "expressly aimed" means "when the

24  defendant is alleged to have engaged in wrongful conduct targeted

25  at a plaintiff whom the defendant knows to be a resident of the

26  forum state."  *Bancroft*, 223 F.3d at 1087.  The Ninth Circuit has

27  cautioned, however, that any foreign act with foreseeable effects

28  in the forum state does not always give rise to personal

**17**

1    jurisdiction.  *Bancroft*, 223 F.2d at 1087; *see also*

2    *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 804-5 (9th

3    Cir. 2004).  "Instead,...'something more' is required to

4    establish that the defendant expressly aimed its conduct at the

5    forum."  *Medinah Mining*, 237 F. Supp. 2d at 1137.  In order for

6    the "express aiming" element of the effects test to be satisfied,

7    the Defendant must know that the plaintiff is a resident of the

8    forum state and that the harm resulting from the intentional act

9    will be suffered in the forum state.  *Bancroft*, 223 F.2d at 1087;

10   *Medinah Mining*, 237 F. Supp. 2d at 1137; *see also Calloway Golf

11   Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1200-1

12   (C.D. Cal. 2000).

13       There is no evidence that Defendant Grant knew that

14   Defendant Katzenbach was a resident of California.  In fact, the

15   only information regarding this issue is Grant's "Declaration,"

16   which states that Grant did not know Mr. Katzenbach was a

17   resident of California until this lawsuit was filed.  (Doc. 15,

18   Def.'s Mem. 3-5; Grant Decl. ¶ 7).  Assuming that Mrs. DeFeo's

19   letter to Sony Pictures and USA Network was defamatory, the harm

20   of the defamation would have been suffered in California, since

21   Sony and USA Network are located in California and any film would

22   most likely have been produced in California.  However, there is

23   no allegation that Sony and USA Network ever looked at the letter

24   on *Grant's* website.  The letter was written by Mrs. DeFeo, not by

25   Defendant Grant.  While the letter was originally sent to

26   California, it was Mrs. DeFeo, not Defendant Grant, who sent the

27   letter.  Mr. Katzenbach is not even mentioned by name in the

28   letter; only Plaintiff Osuna is mentioned, and he is a resident

**18**

of Nevada.   There is no evidence, nor any legal support, that Grant's posting of the letter, or any of the other defamatory statements, in South Carolina, was expressly aimed at Katzenbach in California.  *See Medinah Mining*, 237 F. Supp. 2d at 1137-8; *Callaway Golf*, 125 F. Supp. 2d at 1200-1; *Schwarzenegger*, 274 F.3d at 807.  Plaintiffs have not established the second element of the effects test based on his posting of information to his website.  Plaintiffs have failed to establish the purposeful availment element based on Grant's posting of information on his website.

Plaintiff's second argument for purposeful availment is based again on Grant's contract with E-Bay.  This case does not involve the E-Bay contract.  The contract contains a choice of forum provision for disputes relating to that contract and a waiver of personal jurisdiction consenting to personal jurisdiction in Santa Clara County, California, in the Northern District of California, to resolve disputes between Mr. Grant and E-Bay.  Defendant Grant (who does not deny having such a contract with E-Bay) purposefully availed himself of the privileges of doing business in California by entering into this E-Bay contract, by which he agreed to personal jurisdiction in California for E-Bay business disputes.

### (b)   Whether Plaintiffs' Claims Arise Out of Defendants' Forum-Related Activities.

The next inquiry is whether Plaintiffs' claims in this suit arise out of Defendant's forum-related activities.  Plaintiff has shown that Defendant Grant purposefully availed himself of the

laws and privileges of California by submitting to a waiver of jurisdiction by signing the E-Bay contract.  The E-Bay contract is unrelated to the claims in this case.  Plaintiffs' claims here arise out of Grant's posting of information on his website that is alleged to have contributed in part to the apparent failure of Plaintiffs' negotiations with a motion picture production company to produce a movie.

The purpose of Mr. Grant's website was not clarified by either party.  One of the purposes appears to be to keep the Amityville murders and Mr. Defeo in the public interest, and to attempt to commercialize and profit from the continuing notoriety and public interest of this subject.  Mr. Grant's attempted sales of paintings by Mr. Defeo on his website, including through E-Bay, are remotely related to this purpose.  There seems to be some logical connection between the subject matter of Mr. Osuna's book, the Plaintiffs' alleged movie deal, and the purpose of Mr. Grant's website.  The connection, however, is tenuous.

Ultimately, the defamation claim and the other intentional tort claims that are the subject matter of this lawsuit do not "arise out of" the E-Bay contract.  Plaintiff has failed to establish the first two elements of specific jurisdiction.

### (c)   Whether Assertion of Jurisdiction over Defendant is Reasonable.

If a plaintiff successfully establishes the first two elements of specific jurisdiction, the burden shifts to the defendant to establish that exercise of jurisdiction would not be reasonable.  It is unnecessary to continue with the

reasonableness analysis because Plaintiffs have failed to establish a prima facie case of jurisdiction.[7]

### 3. Conclusion.

Plaintiff has failed to establish a prima facie case that either general or specific jurisdiction exist over Defendant Grant.  Defendant Grant's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED** with leave to amend.

### C. Defendant Grant's Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. P. 12(b)(6) allows a defendant to attack a complaint for failure to state a claim upon which relief can be granted.  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is disfavored and rarely granted: "[a] complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).  In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *TwoRivers v. Lewis*, 174 F.3d 987,

---

[7] The Court notes that Defendant Grant argues that the assertion of personal jurisdiction in California would be unreasonable because (1) he suffers from Facioscapulohumeral Muscular Dystrophy and (2) he is currently unemployed and subsides on disability payments, which would both make it difficult for him to travel to California to defend this case. (*See* Doc. 15, Def.'s Mem. at Grant Decl. ¶¶ 4, 5).

1  991 (9th Cir. 1999).

2       "The court need not, however, accept as true allegations
3  that contradict matters properly subject to judicial notice or by
4  exhibit.  Nor is the court required to accept as true allegations
5  that are merely conclusory, unwarranted deductions of fact, or
6  unreasonable inferences."  *Sprewell v. Golden State Warriors*,
7  266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).  For
8  example, matters of public record may be considered under Fed. R.
9  Evid. 201, including pleadings, orders and other papers filed
10 with the court or records of administrative bodies.  *See Lee v.*
11 *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).
12 Conclusions of law, conclusory allegations, unreasonable
13 inferences, or unwarranted deductions of fact need not be
14 accepted.  *See Western Mining Council v. Watt*, 643 F.2d 618, 624
15 (9th Cir. 1981).

16

17            **1.    Whether Plaintiffs State a Claim for Defamation.**

18       Plaintiffs' FAC contains a claim for "Defamation of
19 Character, Libel & Slander," and cites Cal. Civ. Code §§ 43, 45,
20 45(a), 46, 46(1), 46(3), and 46(5).[8]  As a preliminary matter,
21 Defendant Grant argues that Plaintiffs do not state a claim for

22 _____

23       [8] Plaintiffs cite Nevada state law in their complaint.
   There was no discussion by the parties as to whether Nevada or
24 California law applies here.  In diversity cases, such as this
   one, federal district courts apply the law of the forum state
25 unless a party has timely invoked the law of another state.  *Erie*
   *R.R. Co. v. Tompkins*, 30 U.S. 64, 78 (1938); *Bird v. Lewis &*
26 *Clark College*, 303 F.3d 1015, 1023 (9th Cir. 2002).  Neither
   party discussed the applicable law in their papers or during oral
27 argument.  The law of the State of California will therefore be
28 applied.

slander because "all of the allegations in the FAC involve written statements."  (Doc. 15, Def.'s Mem. 6).  Plaintiff responds that Cal. Civ. Code § 46 states that slander can be communicated by "any mechanical or other means," and argues that the alleged defamatory statements were transmitted via the internet and therefore via "mechanical" means.  (Doc. 20, Pl.'s Mem. 9).

Cal. Civ. Code § 46 defines slander as "a false and unprivileged publication, orally uttered, and also communications by radio or any other mechanical means...." (emphasis added). Cal. Civ. Code § 45 defines libel as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye...." (emphasis added).  The traditional distinguishing factor between slander and libel is that slander is a statement communicated orally, whereas libel is communicated via the written word.  Plaintiffs do not state a claim for slander, since all of their allegations relate to Defendants' written statements. *See Varian Med. Syst., Inc. v. Delfino*, 6 Cal. Rptr. 3d 325, 341-2 (2003) (analyzing legislative history of Cal. Civ. Code §§ 45 and 46 and finding that California legislature did not intend to include communications via the Internet in definition of slander), *rev'd on other grounds* 35 Cal.4th 180 (2005).  The phrase "mechanical means" refers to mechanical means capable of transmitting orally uttered statements.  *See id*.

To state a claim for libel, the First Amendment requires that a plaintiff first establish that the allegedly false statement on which the claim is based is "of and concerning" the

23

1   plaintiff.  *Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1045

2   (1986).  To satisfy this requirement, "the plaintiff must

3   effectively plead that the statement at issue either expressly

4   mentions him or refers to him by reasonable implication."  *Id*. at

5   1046.  For a statement to be libelous, California law requires

6   that the offending statement "expressly or impliedly assert a

7   fact that is susceptible to being proved false, and [is]

8   reasonably able to be interpreted as stating actual facts."

9   *Coastal Abstract Svc., Inc. v. First Amer. Title Ins.*, 173 F.3d

10  725, 729 (9th Cir. 1999) (internal citations and quotations

11  omitted); *see also Couch v. San Juan Unified School Dist.*, 33

12  Cal. App. 4th 1491, 1501 (3d Dist. 1995).

13       Whether a published statement is reasonably susceptible of

14  an interpretation that implies a provable assertion of fact is a

15  question of law for the court.  *Id*.  To answer the question

16  whether a statement has a defamatory meaning or is mere opinion

17  (which is not actionable), "the court looks to whether the

18  reasonable reader would interpret the statement, taken in

19  context, to imply a false assertion of fact."  *Isuzu Motors, Ltd.*

20  *v. Consumers Union of United States*, 12 F. Supp. 2d 1035, (C.D.

21  Cal. 1998) (citing *Norse v. Henry Holt & Co.*, 991 F.2d 563, 566

22  (9th Cir. 1993); *see also Norse*, 991 F.2d at 566 ("To discern

23  whether a statement has a defamatory meaning, we interpret it

24  from the standpoint of the average reader, [ ] judging the

25  statement not in isolation, but within the context in which it is

26  made.").

27       Plaintiffs assert that a number of statements published by

28  Defendant Grant on his website are libelous.

**24**

1   //

2

3                    **(a)   First Statement.**

4        The first statement Plaintiffs allege is defamatory is the

5   following:

> Attention: If you feel that fraud and deceit has been
> perpetrated upon you from the book "The Night the Defeos
> Died" and continues to be with the production of a movie
> based upon that book and wish to make this known to the
> court by the way of a sworn (before a notary) affidavit
> please email mrsdefeo@hotmail.com.  Only do this if you
> purchased the book "The Night the Defeos Died."  Also, ***if
> you have had any first hand observations of the deception
> and lack of any form of moral guidance Ric Osuna, Geraldine
> Gates, Ryan Katzenbach, Katco and Xlibris have conspired to
> create and deceive the public with*** please email
> mrsdefeo@hotmail.com.  Thank you Mrs. Defeo.

13  (Doc. 9, FAC ¶ 50, Ex. O (emphasis added); *see also* Doc. 15,

14  Def.'s Mem. 7).  Defendant does not deny that the first statement

15  identified by Plaintiffs appeared on his website.  Defendant

16  argues this is not a defamatory statement because it only asks

17  readers of the book whether they "feel" they were deceived by the

18  book.  (Doc. 15, Def.'s Mem. 7).  Defendant analogizes the

19  statements to inquiries readers would make if they felt deceived

20  by "the slant [an] author took, or the information he chose to

21  include or exclude."  (*Id*. at 7).  For example, Defendant argues

22  that calling Michael Moore's film Fahrenheit 911 "deceptive" is

23  not libelous because doing so merely expresses the viewer's

24  opinion that Moore's shading of the facts was deceptive.  (*Id*.).

25       Plaintiffs respond by claiming that the statement accuses

26  Plaintiffs of committing a "crime of moral turpitude," and that

27  statement is therefore *per se* defamatory.  (Doc. 20, Pl.'s Opp.

28  10).  Defendant replies that "no one reading the post on the

                                25

website [in context] would believe that the statement accused Plaintiffs of the crime of deception." (Doc. 22, Def.'s Reply 5). Defendant cites portions of the FAC that provide some context for the statement. Plaintiff Osuna based his book *The Night the Defeos Died* on interviews with a woman named Geraldine Gates who claims to have been Ronald Defeo's wife at the time of the murders. Plaintiffs allege that "[s]ome believed that Geraldine Gates' account of the story...was true. Others did not accept that, and labeled Gates a fraud seeking money and publicity." (Doc. 9, FAC ¶ 25). Defendant argues that if the above statement is considered in the context of the controversy regarding Ms. Gates that has arisen in the "Amityville Establishment," it is not libelous because "Plaintiffs are only accused of publishing a book which used interviews with a witness who might not have told the truth." (Doc. 22, Def.'s Reply 5).

The statement refers to Plaintiffs Katzenbach and Osuna by name, so the first requirement of libel that the statement is "of or concerning" the plaintiffs is met. The next step is to determine whether the statement is "reasonably able to be interpreted as stating actual facts," and if so, whether those facts are susceptible to being proved false. *Coastal Abstract*, 173 F.3d at 729. Without directly stating so, this statement implies that Plaintiffs are dishonest and immoral and that Plaintiff Osuna's book is deceptive. These statements are not statements of fact. They are statements of opinion about the moral character and honesty of Plaintiffs and about the content and presentation of the book. The statements do not accuse Plaintiffs of committing any crime, let alone any crime of "moral

26

turpitude," that would meet the standard for *per se* defamation. The statements do not accuse the book of containing false facts; they accuse the book of being deceptive.  History and facts can be interpreted and presented in a number of different ways; readers are entitled to express their opinions about then interpretation and the author's presentation.

Defendant Grant's Motion to Dismiss Plaintiffs' Claim for Libel as to the First Statement (Doc. 9, FAC ¶ 50) is **GRANTED.**

### (b)   Second Statement.

The second statement complained of can be divided into two parts and is contained in the letter sent by Tracey Lynn Defeo to Sony Pictures:

> I am writing to inform you that a fraud has been enacted upon your studio....  I have learned that you are in production to make a movie of Ric Osuna's book "The Night the Defeos Died," and that the rights you acquired are based upon this ***self-published book***.
>
> *   *   *
>
> It has always been my understanding that ***your network does not intend to deceive your audiences***, nor does it deliberately contribute to the financial gain of ***animal abusers, convicted felons or pornographers***.

(Doc. 9, FAC ¶ 53, Ex. P) (emphasis added).  Although this letter was written and sent by Defendant Defeo, the letter was posted on Defendant Grant's website, and therefore was published Defendant Grant as well.

First, the letter mentions Plaintiff Osuna by name, and is therefore "of or concerning" Mr. Osuna.  The letter does not mention Plaintiff Katzenbach by name.  Plaintiff Katzenbach asserts he is impliedly referenced because he was involved in the

27

1   movie production negotiations with Sony and USA Pictures.
2   However, Plaintiffs have not plead that his involvement in the
3   movie was generally known to the public or that the proposed
4   movie has acquired a secondary meaning associated with him.
5   Plaintiff Katzenbach is not a public figure, so it is not likely
6   that the general public would have known about his involvement
7   with Mr. Osuna and the potential movie deal.  That Sony Pictures
8   and USA Network may have known about his involvement is
9   irrelevant for the purposes of the analysis as to Defendant
10  Grant; Grant is not alleged to have sent the letter to Sony and
11  USA, but instead is only alleged to have posted it on his
12  website.  Plaintiffs do not allege that Sony or USA Network
13  viewed the letter on Grant's website.  The allegedly defamatory
14  statements in the letter are therefore not "of and concerning"
15  Plaintiff Katzenbach and are only "of and concerning" Plaintiff
16  Osuna.

17      The next step is to determine whether the statements in the
18  letter are facts susceptible to be proved false.  Plaintiff first
19  complains that the phrase "self-published book" is defamatory
20  because it is false and it hurts Plaintiff Katzenbach's
21  reputation.  Plaintiffs allege that Mr. Osuna's book was
22  published by Mr. Katzenbach.  Plaintiffs argue that the statement
23  that Mr. Osuna published his book himself injured Mr.
24  Katzenbach's reputation as a publisher since Mr. Katzenbach had
25  represented to Sony and USA Network that Mr. Katzenbach was the
26  publisher of Mr. Osuna's book.  Plaintiffs' arguments fail as to
27  Defendant Grant.  There are no allegations that Mr. Katzenbach is
28  a public figure or that his reputation as a publisher in the

public eye would be negatively affected by the implication that Mr. Osuna's book was self-published.  From the face of the letter, there is no reference to Plaintiff Katzenbach.  This statement cannot support a defamation claim and Defendant's Motion to Dismiss Plaintiff's libel claim as to this statement (Doc. 9, FAC ¶ 53, 21:12-4) is **GRANTED**.[9]

The Plaintiffs next complain that the statements in the second part of the letter imply that that Plaintiff Osuna has deceived Sony and USA Network because his book is deceitful and that Plaintiff Osuna is an animal abuser, convicted felon and/or a pornographer.

The accusation that someone is an animal abuser, a convicted felon, and/or a pornographer is defamatory *per se*.  These statements are facts susceptible to being proved false and tend to harm reputation.

The only statement for which Defendant Grant asserts the defense of truth is the reference to pornographers.  Plaintiffs made a number of allegations in their FAC relating to a website on which Mr. Osuna and his wife posted nude photographs of Mr. Osuna's wife.  Plaintiff Osuna does not dispute that his wife is an exotic dancer and that she had a website on which "promotional" nude photographs were posted.  Plaintiffs assert that the website no longer exists.  Whether Defendants can succeed with a truth defense is a mixed question of law and fact

---

[9] Plaintiffs do not appear to base their libel claim on the statement "a fraud has been enacted on your studio."  This statement will not be considered.  Arguendo, it is a statement of opinion.

1  not appropriately decided on a motion to dismiss.

2      Finally, the accusation that someone has been deceitful is

3  not defamatory *per se* an accusation is not a fact reasonably

4  susceptible to being proved false.  As discussed above, the

5  implication is that someone has been deceptive is an opinion.

6      Defendant Grant's Motion to Dismiss Plaintiffs' claim for

7  defamation is **GRANTED** with respect to all statements in the

8  letter, except with respect to the reference to Plaintiff Osuna

9  as an animal abuser, convicted felon, or pornographer,  (Doc. 9,

10  FAC ¶ 53, 21:23-5) as to which Defendant Grant's Motion to

11  Dismiss Plaintiffs' claim for Libel is **DENIED.**

12

13                  **(c)   Third Statement.**

14      The third statement alleged to be defamatory is a posting to

15  Defendant's website that states: "New 10/05/04 Here are some

16  links to Ric Osuna's wife's porn site...."  (Doc. 9, FAC ¶ 55).

17  Defendant does not dispute that this statement was posted to his

18  website.  Defendant argues that this statement is not libelous

19  because it is true.  Defendant argues that Plaintiffs acknowledge

20  in the FAC that Ric Osuna's wife is an exotic dancer who works in

21  Las Vegas, and that Ric Osuna was the photographer for a website

22  for his wife.  In addition, Defendants point to Ex. Y of the FAC,

23  which are excerpts from a deposition transcript of Plaintiff

24  Osuna in which Defendants argue that Osuna admits that he helped

25  his wife with her website which published nude photographs of

26

27

28

1  her.[10]  (Doc. 9, FAC, Ex. Y).  In a footnote to the FAC,

2  Plaintiffs claim that the purpose of the website was to promote

3  Plaintiff Osuna's wife's dancing, which is a "legal profession,"

4  and that it has not been active for at least 4 years.  (Doc. 9,

5  FAC 22 n. 3).

6       Plaintiffs argue that the above statement is defamatory on

7  its face because "it would require readers to read the entire

8  deposition to understand exactly what is being said."  Plaintiffs

9  further argue that "[o]nly upon reading the deposition would

10  readers conclude that Plaintiff Osuna was being badgered by Lutz'

11  counsel...."  (*Id.*).

12       The statement at issue here refers only to Plaintiff Osuna,

13  and is not of or concerning Plaintiff Katzenbach.  The statement

14  implies that Mr. Osuna's wife has a "porn site."  The implication

15  that an individual is directly involved or associated with a

16  pornographic website can tend to injure an individual's

17  reputation, and therefore is *per se* defamatory.

18       Here, the defense of truth is asserted.  Plaintiffs dispute

19  ─────────────────

20       [10] Plaintiffs argue that the deposition was not signed by
    Plaintiff Osuna and that "the unauthorized use of such
21  constitutes defamation and libel as well as claims of violation
    of privacy."  (Doc. 20, Pl.'s Mem. 12).  The deposition
22  transcript is a public document, regardless of whether it was
    signed, unless it is the subject of a protective order or was
23  sealed.  There is no evidence that the deposition transcript is
    sealed or the subject of a protective order.  Plaintiffs attached
24  the deposition transcript to their complaint in this litigation,
    which is also a public proceeding.  Plaintiffs' argument has no
25  merit.  Plaintiffs do not deny that Mr. Osuna's wife had a
    website.  Photographs posted on a website cannot be the subject
26  of invasion of privacy.  Websites are not, by definition,
    private; one of their very purposes is to be viewable by and
27  accessible to the public at large.

28

31

that the website was "pornographic," and assert that the website was merely a "promotional" website.  Plaintiffs have conceded that Plaintiff Osuna was at one time involved with his wife's website.  Plaintiffs attach to the FAC Mr. Osuna's deposition testimony from another litigation wherein Mr. Osuna admits that it posted "adult related material for swingers clubs and things like that."  (Doc. 9, FAC, Ex. Y at 1).  Whether the material found there, which has not been provided, is susceptible to being viewed as pornography is a matter of opinion.  The defense of truth involves mixed questions of law and fact not appropriately decided on a Rule 12(b)(6) motion.

Defendant's Motion to Dismiss Plaintiffs' Libel claim as to Plaintiff Osuna regarding the statement "Here are some links to Ric Osuna's wife's porn site" (Doc. 9, FAC ¶ 55) is **GRANTED**.

### (d)   Fourth Statement.

The fourth statement Plaintiffs allege is defamatory is a posting to Defendant's website by a person known as "Sherbetbizarre."  The statement refers to Plaintiff Katzenbach and states "He Failed Before."[11]  (Doc. 15, Def.'s Mem. 8).  The posting refers to a book published by Plaintiff Katzenbach's company titled *The King is Dead*.  The person known as "Sherbetbizarre" posted two book covers of *The King Is Dead*, one

[11] The parties also do not raise the question of applicability of 47 U.S.C. § 230(c)(1), which provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  The applicability of this section will therefore not be addressed here.

with a banner stating that the book was soon to be a major television event and another cover (from a later edition of the book) without the banner.  Plaintiffs allege that this statement is defamatory because it implies that Plaintiff Katzenbach is a "failure."  (Doc. 9, FAC ¶ 57).

Plaintiffs state in a footnote to the FAC that Plaintiff Katzenbach had sold the rights and options to Twentieth Century Fox, but that those rights had since "reverted back" to Katzenbach.  Plaintiffs assert that Katzenbach, by his own choice, decided to sit on the rights before pitching the screenplay to another studio.  (Doc. 9, FAC, p. 24 n. 4). Defendant maintains that the allegedly defamatory statement, "He Failed Before" is not the same as "He is a failure," and that in any event the statement "He Failed Before," is factually true. (Doc. 22, Def.'s Reply 6).

First, the statement refers to Plaintiff Katzenbach, and therefore is only "of or concerning" Plaintiff Katzenbach. Second, taken in context, the statement "He Failed Before" is an opinion characterizing the fact that Plaintiff's book cover, at one time, stated that the book was to be a television program, and that the statement was removed from a later edition of the book.  Plaintiff Katzenbach does not deny that at one time the rights to his book belonged to Twentieth Century Fox, and that later the rights reverted back to him.  Nor was any television program based on the book ever aired.  Plaintiff does not believe that the reversion of the rights back to him means that he "failed."  The person who posted the statement, however, does interpret the events in this way.  This statement is opinion.

1  Plaintiff has failed to allege facts that support a claim of

2  //

3  //

4  //

5  defamation for the statement "He Failed Before."[12]

6      Defendant's Motion to Dismiss Plaintiffs' libel claim as to

7  the statement "He Failed Before" (Doc. 9, FAC ¶ 57) is **GRANTED**.

8

9        **2.   Whether Plaintiffs State a Claim for Tortious
   Interference with Contractual Relations.**

10

11      Plaintiffs' second cause of action is tortious interference

12  with contractual relations.  To state a claim for tortious

13  interference with contractual relations, a plaintiff must plead

14  the following 5 elements:

15      (1) a valid contract between plaintiff and a third party;
16      (2) defendant's knowledge of this contract; (3) defendant's
        intentional acts designed to induce a breach or disruption

17

18     [12] Plaintiffs cite *O'Connor v. McGraw Hill,* 159 Cal. App. 3d
19  478 (1984), in support of their argument that "He Failed Before"
    implies that Plaintiff Katzenbach is a failure:  "A defendant is
20  liable for what is insinuated as well as for what is stated
    explicitly."  *O'Connor* is distinguishable and does not support
21  Plaintiffs' argument.  The allegedly defamatory statements in
    *O'Connor* were published in a magazine and implied that a large
22  corporation had lost its bid on a contract to be the sponsor for
    the 1984 Summer Olympics in Los Angeles due to the arrogance of
23  one of the corporation's attorneys during bid negotiations.  The
    attorney allegedly lost his job after the article was printed and
24  sued the publisher of the magazine for defamation.  The Court
    held the attorney's claim should not be dismissed because the
25  implication that his behavior caused a breakdown in the contract
    negotiations could be considered defamation.  Whether or not the
26  attorney's behavior caused a breakdown was a fact susceptible to
    being proved false.  Here, there is no such implied fact in the
27  statement "He failed before."  This statement is opinion.
    *O'Connor* does not apply.
28

of the contractual relationship; (4) actual breach or
disruption of the contractual relationship; and (5)
resulting damage.

*Pacific Gas & Elec. Co. v. Bear Stears & Co.*, 50 Cal.3d 1118,
1126 (Cal. 1990).  Defendant argues that Plaintiffs fail to
allege the first and fourth elements of this claim.  Defendant
argues that Plaintiffs fail to allege the existence of a contract
and that they only allege that they struck a "tentative deal"
with USA Networks and Sony Pictures regarding the production of
the film.  (Doc. 15, Def.'s Mem. 9).  Second, Defendant also
argues that Plaintiffs have not alleged an actual breach of the
alleged contractual relationship, and in fact allege the opposite
when they assert that "[s]aid project with USA Networks and Sony
Pictures is currently, as of date of this complaint, is [sic] in
development."  (Doc. 9, FAC ¶ 22).

Plaintiffs acknowledged during oral argument that there is
no contract with Sony or USA Network, and no breach.  Plaintiffs
have failed to plead all elements required for a claim for
tortious interference with contractual relations.  Defendant's
Motion to Dismiss Plaintiffs' claim for Tortious Interference
with Contractual Relations is **GRANTED** with leave to amend.

### 3. Whether Plaintiffs State a Claim for Unfair Business Practices Under Cal. Bus. & Prof. Code § 17200.

Plaintiffs appear to confuse their claim for tortious
interference with contractual relations with their claim for
unfair business practices under Cal Bus. & Prof. Code § 17200.
These are separate causes of action and must be pled separately.

35

Whether Plaintiff has stated a claim under Section 17200 is analyzed under that law.

To state a claim under Section 17200, a plaintiff need not allege the elements of a tort; a plaintiff must only allege that the defendant engaged in a business practice or act that was unfair, unlawful, or fraudulent, and that members of the public are likely to be deceived by the practice. *Bank of the West v. Super Ct. of Contra County*, 2 Cal.4th 1254, 1266-7 (1992); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). Section 17200 "governs anti-competitive business practices as well as injuries to consumers, and has as a major purpose the preservation of fair business competition." *Cel-Tech Communications, Inc. v. Los Angeles Cellular*, 20 Cal.4th 163, 180 (1999) (internal quotations and citations omitted). "The tort encompasses practices which offend established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th 2001).

Plaintiffs allege that Defendant's unfair, unlawful, or fraudulent act under Section 17200 is the posting of the following statement on his website:

> One last thing!!! Stopping the movie being produced by Sony and aired by USA Network of the book by Ric Osuna, The Night the Defeos Died is a priority!

The statement was later revised to state:

> One last thing!!! Stopping the movie being produced by "SONY" and Aired by "USA" Network of the book by Ric Osuna, The "Night the Defeos Died," until a revision is made.

Defendant argues that posting these statements is not a wrongful act within the meaning of the Unfair Business Practices Act.

36

1    Plaintiffs do not allege in their Complaint that Defendant
2 Grant is in competition with Plaintiffs.[13]  Plaintiffs do not
3 allege that the public is likely to be deceived by these
4 statements.  Plaintiffs only allege that, by posting these
5 statements on his website, Defendant Grant interfered with
6 Plaintiffs' business relationship with Sony Pictures and/or USA
7 Network.  (*See* FAC ¶ 65).  This is not sufficient for a unfair
8 business practices claim.

9    Plaintiff's Complaint fails to state a claim against
10 Defendant Grant under Section 17200.  Defendant Grant's Motion to
11 Dismiss Plaintiffs' claim under Cal. Bus. & Prof. Code § 17200 is
12 **GRANTED** with leave to amend.

13

14              **4.    Whether Plaintiffs State a Claim for Copyright**
                        **Infringement.**
15

16    Plaintiff's claim for copyright infringement against
17 Defendant Grant is based on the allegation that Defendant Grant
18 allowed the person known as "Sherbetbizarre" a/k/a Jason Pyke to
19 post on Grant's website the cover graphics of the book, *The King*
20 *is Dead*, which were designed by Plaintiff Katzenbach and are
21 alleged to be copyrighted by him.

22    Section 411 of the Copyright Act (17 U.S.C. § 411) provides
23 in part:

24        (A) Except for an action brought for a violation of the
          rights of the author under section 106A(a), and subject to
25

26 _____
27 [13] Plaintiffs assert in their opposition brief (but not in
   their Complaint) that Defendant is in competition with Plaintiff
   because he has "joined forces with others who have interests in
28 releasing" another Amityville Horror movie.

1
2
3

the provisions of subsection (b), no action for infringement
of the copyright in any United States work shall be
instituted until registration of the copyright claim has
been made in accordance with this title.

4      Defendant correctly states that the registration requirement

5  is jurisdictional and that Plaintiff Katzenbach cannot bring an

6  action for copyright infringement until he has registered the

7  work with the Copyright Office.  *See Kodadek v. MTV Networks,*

8  *Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998).  Plaintiff concedes

9  that he has not registered *The King is Dead* book covers with the

10 copyright office, although claimed in his brief that he is in the

11 process of registering.  Plaintiff conceded at oral argument that

12 he has no copyright and did not reassert that he was still in the

13 process of registering.

14     Defendant's Motion to Dismiss Plaintiff's Claim for

15 Copyright Infringement is **GRANTED** without leave to amend.[14]

16

17          **5.   Whether Plaintiffs State a Claim for Trademark
               Infringement.**

18

19

20 _____

21     [14] Defendant argues in the alternative that posting the
   graphic covers of the first and second edition of *The King is*
22 *Dead* was a fair use permitted by the Copyright Act, 17 U.S.C. §
   107.  Defendant's fair use argument need not be considered
23 because there is no copyright.  In addition, the fair use defense
   is not appropriately decided at the pleading stage.  Fair use is,
24 under some circumstances, appropriately decided on a summary
   judgment motion.  *See Hustler Magazine, Inc. v. Moral Majority,*
25 *Inc.*, 796 F.2d 1148, 1150-51 (9th Cir. 1986).  Defendant,
   however, has moved for dismissal, not for summary judgment.
26 Consideration of Defendant's fact-intensive arguments regarding
   why use of the graphic book covers is a "fair use" is not
27 appropriate at the pleading stage.  Plaintiff's copyright claim
   is not dismissible for this reason.
28

1   The Lanham Act defines a trademark as "any word, name,
2   symbol, or device, or any combination thereof...used...to
3   identify and distinguish his or her goods, including a unique
4   product, from those manufactured or sold by others and to
5   indicate the source of the goods, even if that source is
6   unknown."  15 U.S.C. § 1127 (2000).  "[The Lanham Act] makes
7   actionable the deceptive and misleading use in commerce of 'any
8   word, term, name, symbol, or device' on any goods or 'in
9   connection with any goods.'"  *Kendall-Jackson Winery, Ltd. v. E &*
10  *J. Gallo Winery*, 150 F.3d 1042, 1046 (9th Cir. 1998) (quoting
11  15 U.S.C. § 1125(a)(1)).  To state a claim for trademark
12  infringement, a plaintiff must allege a valid trademark and must
13  also allege three elements: (1) distinctiveness;
14  (2) nonfunctionality; and (3) likelihood of confusion.  *Id.* at
15  1046-7; *see also Talking Rain Beverage Co. Inc. v. South Beach*
16  *Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003).

17      Plaintiffs' trademark infringement claim is brought only on
18  Plaintiff Osuna's behalf.  Plaintiffs allege that Defendants have
19  infringed upon Osuna's alleged common law trademarks to the
20  phrases "The Amityville Murders," and "The Night the Defeos
21  Died," and to his proper name, "Ric Osuna" by inserting these
22  phrases as "meta-tags" into Defendant Grant's website.[15]  (Doc.
23  9, FAC ¶¶ 81, 83).

24      Plaintiff has failed to allege facts that show a valid

25

26      [15] According to Plaintiffs, "meta-tags" are "'keywords' that
27  attract visitors to their website through the use of search
    engines that find the keywords in the hidden code."  (Doc. 9, FAC
28  ¶ 81).

trademark.  As stated above, a trademark is "any work...used by a person...**to identify and distinguish his or her goods**, including a unique product, **from those manufactured or sold by others**." 15 U.S.C. § 1127.  Marks identifying services can also be trademarks.  *See id*.  Plaintiff identifies no goods or services that are distinguished by the phrases "The Amityville Murders," "The Night The Defeos Died," or "Ric Osuna."  Plaintiff identifies no goods or services sold under the same name or to which a secondary meaning has attached.  The words are generic descriptions of events and an individual name.

Trademarks can also be valid if registered with the trademark office, or if the person using the trademark intends to apply for a trademark.  Plaintiffs provided no evidence of any registered trademark and did not indicate any intent to register.

Plaintiffs have not stated a claim for trademark infringement.  Defendant's Motion to Dismiss Plaintiff's claim for trademark infringement is **GRANTED** with leave to amend.

### 6.  Whether Plaintiffs State a Claim for Invasion of Privacy.

To state a cause of action for invasion of privacy, a plaintiff must allege: (1) a legally protected privacy interest, (2) a reasonable expectation of privacy, (3) a serious invasion of the privacy interest.  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 40 (1994).

"Legally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational

**40**

1   privacy'); and (2) interests in making intimate personal

2   decisions or conducting personal activities without observation,

3   intrusion, or interference ('autonomy privacy')." *Id.*

4   Plaintiffs assert that the following constitute invasions of

5   their "privacy interests:" (1) Defendant Grant's posting to his

6   website Plaintiff Osuna's uncertified deposition testimony from a

7   Nevada state court case in which he is questioned and offers

8   answers regarding his wife's website; (2) Defendant's posting to

9   his website a link to the same website; and (3) the active

10  searching by defendants for links to the now-defunct website.

11  (Doc. 9, FAC ¶¶ 91-2).

12      Plaintiffs have failed to state a claim for invasion of

13  privacy because they have failed to identify any legally-

14  protectable privacy interests.  First, testimony provided in a

15  deposition as part of litigation is not private, whether or not

16  it was signed, because litigation is, by its nature, public.  A

17  reasonable person could not expect that anything said in a

18  deposition would remain private.  Second, there is no privacy

19  interest in a website link.  A reasonable individual would not

20  expect that links to a website are private because the Internet

21  is a public forum.  Plaintiff Osuna acknowledges in the FAC that

22  his wife, an exotic dancer, had a website and that Ric Osuna

23  participated in this website.  Third, it is not an invasion of

24  privacy for Internet users to search for a website.  The Internet

25  is a public forum.

26      Defendant's Motion to Dismiss Plaintiffs' claim for invasion

27  of privacy is **GRANTED** without leave to amend.

28

**41**

**7.   Whether Plaintiffs State a Claim for Intentional Infliction of Emotional Distress.**

The elements of Intentional Infliction of Emotional Distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Christensen v. Super Ct.*, 54 Cal.3d 868, 903 (1991) (internal citations omitted), *cited with approval in In re Peck*, 295 B.R. 353, 366 (9th Cir. 2003).  Conduct is deemed outrageous if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Christensen*, 54 Cal.3d at 903 (citation omitted).  The conduct must be "of a nature that is especially calculated to cause...mental distress of a very serious kind." *Ochoa v. Super. Ct.*, 39 Cal.3d 159, 165 n. 5 (1985) (internal quotations and citation omitted).

Defendants argue that "Plaintiffs' only complaint against Grant is that he ran a website on which other people (not Grant) made statements about Plaintiffs that they "felt" were defamatory and that there was a statement posted on the website saying that stopping a movie based on Osuna's book is a priority." (Doc. 15, Def.'s Mem. 19).  Defendants are correct in that these type of actions do not rise to the level of "outrageous conduct" under applicable case law.  Instead, they express views about Plaintiffs' intellectual property and public promotion efforts that are critical of Plaintiffs.  Such a risk of critical comment is inherent in the commercialization of such ideas and activities

42

intended for public consumption.

Plaintiff fails to state a cause of action for intentional infliction of emotional distress.  The only "extreme and outrageous conduct" of Defendant that Plaintiffs allege is the conduct referred to in support of the other causes of action, i.e., the posting of allegedly defamatory information on defendant Grant's website.  The conduct here fails to rise to the level of conduct not tolerated in a civilized society.

Defendant's Motion to Dismiss Plaintiffs' Intentional Infliction of Emotional Distress claim is **GRANTED** without leave to amend.

## V.   <u>CONCLUSION</u>

For all the foregoing reasons:

Defendant Grant's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) is **GRANTED** with leave to amend;

Subject to the absence of jurisdiction in this Court, Defendant Grant's Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs' claims for:

1) Libel is **GRANTED**, except with respect to the reference to Plaintiff Osuna as an animal abuser, convicted felon, or pornographer, (Doc. 9, FAC ¶ 53, 21:12-4; ¶ 55), for which Defendant's motion is **DENIED**;

2) Tortious Interference with Contractual Relations is

**43**

1    **GRANTED** with leave to amend;

2    3) Unfair Trade Practices under Cal. Bus. & Prof. Code

3    § 17200 is **GRANTED** with leave to amend;

4    4) Copyright Infringement is **GRANTED** without leave to

5    amend;

6    5) Trademark Infringement is **GRANTED** with leave to

7    amend.

8    6) Invasion of Privacy is **GRANTED** without leave to

9    amend; and

10   7) Intentional Infliction of Emotional Distress is

11   **GRANTED** without leave to amend.

12

13   Any amended Complaint shall be filed within twenty (20) days

14   following date of service of this Order.

15

16   **SO ORDERED.**

17   **DATED: June 7, 2005**

18                                    **/s/ OLIVER W. WANGER**

19                            _____

20                                 **Oliver W. Wanger**
                               **UNITED STATES DISTRICT JUDGE**

21

22

23

24

25

26

27

28

44